**In the United States Bankruptcy Court**
**for the Western District of Pennsylvania**

| | |
|---|---|
| In Re: ) | |
| Carole L. Taylor ) | Bankruptcy No. 10-20954-JKF |
| a/k/a Carol Thompson-Taylor ) | Chapter 13 |
|     Debtor ) | |
| ) | Related to: Document No. 87 |
| Carole L. Taylor ) | |
| a/k/a Carol Thompson-Taylor ) | |
|     Movant ) | |
| ) | |
|     v. ) | |
| ) | |
| Ronda J. Winnecour, Trustee ) | |
|     Respondent. ) | |

**MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO DISMISS [1]**

Before the Court is Debtor's Motion to Dismiss her Chapter 13 bankruptcy case pursuant to 11 U.S.C. § 1307(b). The Motion is contested.

BACKGROUND

Debtor commenced this voluntary Chapter 13 proceeding on February 18, 2010. She listed assets valued at $72,951, of which $3551 is in personal property and the rest is in real estate, as well as three claims of unknown value: one against Negley Park Homeowner Association; one against Robert Fall for professional liability; and, one against Phillip Pelusi for a slip and fall on April 12, 2008. The schedules were later amended to add additional claims of unknown value.

Debtor listed total liabilities of $216,923.70, of which $148,923.70 is a judgment held

---

[1] The court's jurisdiction is not contested. The Memorandum Opinion constitutes our findings of fact and conclusions of law.

against her by Ms. Margaret Messmer that is marked as a disputed lien against property that Debtor lists as co-owned with her daughter, Yvette Taylor. She identified two $34,000 unsecured claims that she owes to her daughters, Collette Taylor and Yvette Taylor on "oral promise[s] to pay student loan[s]." D.N. 13, at Schedule F. She listed seven other creditors as having unliquidated, contingent and disputed unsecured claims of unknown value - all for attorney's fees incurred by a number of individual creditors. From documents submitted by parties and hearings before this Court, the Court understands that these fees were incurred by others based on one or more of the multiple law suits Debtor brought against Margaret Messmer, Negley Park and others, or the suit brought against her by Ms. Messmer.

Debtor claimed a combined average monthly income of $839 (of which $539 is stated to be social security and $300 is help from her daughters) and average monthly expenses of $535, leaving her with $304 per month net income to devote toward a plan. She reports that she had earned income from wages in 2008. She also claimed Social Security income in 2008 and 2009.

Debtor's original chapter 13 plan proposed to devote $300 per month to repayment of her debts. The only creditor listed to be paid, however, was Ms. Messmer at a modified principal balance of $12,000 on her $148,923.70 judgment.

Objections to confirmation were filed by Ms. Messmer on a variety of grounds that can be characterized globally as based on Debtor's bad faith, for, *inter alia*, failing to properly account for assets and their values, providing misleading information about the sources of her funds and income, failing to disclose that the largest of her debts is non-dischargeable, and failing to list her positions as officer or director of several business entities. The objection also can be read to object on the basis of abuse of process. The objection provided information

regarding several of the law suits by and between the parties, including the fact that, nine days prepetition, the federal district court dismissed her legal and equitable claims against the defendants sued by the Debtor and granted all of the defendants' Rule 11 sanctions motions.

Debtor and Ms. Messmer have been involved in a variety of law suits against each other since at least 2005. One, a fraudulent conveyance action brought by Ms. Messmer against Debtor in 2009, was removed to this court. All of the actions have their base in a 2005 offer to purchase Ms. Messmer's condominium unit in Negley Park Condominium, where Debtor resided and resides. Debtor apparently wanted the unit on which the offer was made and eventually sued Ms. Messmer and others for their failure to agree to let her, rather than another prospective buyer, purchase the unit. The litigation in state court was protracted but the end result was that Debtor lost and Ms. Messmer was successful on her counterclaims. A full explanation of the state court litigation can be found at the Objection to Confirmation, D.N. 22, Exhibit A (the Allegheny Court of Common Pleas Court's Memorandum, at Case No. GD05-11900). Debtor's appeals were unsuccessful and Debtor commenced actions in other fora.

Debtor was equally unsuccessful in the District Court for the Western District of Pennsylvania, where Debtor not only lost, but also was found to have conducted "abusive litigation or misuse of the court's process" for behavior that "forced these same Defendants to defend themselves numerous times in various venues on the same claims, and the same resolution has been reached previously by the Court of Common Pleas of Allegheny County, the Pennsylvania Superior Court, the Pennsylvania Supreme Court, the United States Supreme Court, and the City of Pittsburgh Commission on Human Relations on the same issue(s)." D.N. 22, Exhibit B, p. 3 (the District Court's Memorandum Opinion and Order, at Case No. 02:09-cv-

1116).

Debtor filed bankruptcy before the time passed in which the parties could file their claims for attorney fees as provided in the Order of the District Court.

Since the bankruptcy petition was filed, at least three adversary actions have been filed and are pending and the fraudulent conveyance action brought by Ms. Messmer has been removed to this court. Two of the adversary actions challenge dischargeability on grounds including § 523(a)(6), the determination of which is within the exclusive jurisdiction of the bankruptcy court. 11 U.S.C. § 523(c). The third action is a complaint for injunctive relief filed by the chapter 13 Trustee in an effort to locate assets that are allegedly the subject of avoidable transfers by Debtor to or for the benefit of her daughters and/or grandchildren. The chapter 13 Trustee advised in court that, based upon her investigation, she will soon file a fraudulent conveyance action due to Debtor's alleged transfers of property allegedly valued at over $1 million.

In the main case, additional proceedings have occurred. Shortly after the § 341 meeting of creditors was to be held, Debtor filed a motion to convert her case to a chapter 7 case (D.N. 28), a motion she later withdrew (D.N. 88). Debtor also filed a motion to dismiss the bankruptcy case (D.N. 50). Creditor Margaret Messmer filed a motion to convert the chapter 13 case to chapter 7 (D.N. 95). Debtor's first attorney collected $5000 in property of the estate (*See* D.N. 129) which he will turn over to the chapter 13 Trustee. Debtor's first attorney withdrew (D.N. 45) and Debtor now has different counsel. The § 341 meeting of creditors has occurred.

Numerous hearings have taken place at which various counsel have appeared for parties in interest including Ms. Messmer, Negley Park Homeowners Association, the Estates of Flatey

and O'Kane, two minor children, PNC Bank, Collette Taylor, Yvette Taylor, Epic, Inc. and Tolatr. The court has ruled on motions to dismiss or abstain, on preliminary injunctive relief, and on a host of discovery related motions including motions to compel, motions for protective orders, and a motion for contempt. Discovery is underway on other matters and hearings are scheduled.

ANALYSIS

Now that all of the parties with whom Debtor has been litigating for the past six years, having been brought here by Debtor's voluntary petition, are in one forum, the Bankruptcy Court, and, because the chapter 13 Trustee is investigating potentially fraudulent transfers, Debtor seeks dismissal of the case pursuant to 11 U.S.C. § 1307(b), which states:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

Contending that § 1307(b) is mandatory and that a debtor's good faith or lack thereof is not grounds for the court to refuse a debtor's motion to dismiss, Debtor wants relieved from the bankruptcy process she undertook, to the detriment of her creditors. There is no appellate authority in this circuit that construes § 1307(b). There is a split of authority throughout the United States as to whether the section is mandatory or whether the court has discretion to consider the consequences of dismissal on the other parties.[2] This court is aligned with those

---

[2] See In re Jacobsen, 609 F.3d 647, 657 n. 13 (5th Cir. 2010): "In addition to *In re Polly*, [392 B.R. 236 (Bankr.N.D.Tex. 2008),] we have identified five post-*Marrama* decisions that either hold or suggest that the right to dismiss is absolute. *See In re Hamlin*, No. 09-5272-8, 2010 WL 749809, at *4 (Bankr.E.D.N.C. Mar.1, 2010); *In re Sickel*, No. 08-00309, 2008 WL 5076981, at *1 (Bankr.D.D.C. Sept.26, 2008); *In re Campbell*, No. 07-457, 2007 WL 4553596, at *4 (Bankr.N.D.W.Va. Dec.18, 2007); *In re Hughes*, No. 04-40725, 2007 WL 7025843, at *3

courts that interpret the section as permitting the court to consider factors such as a debtor's good faith and whether debtor is using the bankruptcy process in an abusive way, rather than being required to grant a debtor's motion to dismiss regardless of the basis for debtor's conduct, the status of the proceedings, and the consequences to be borne by creditors.

It is worthy of note that, in this case, if Debtor does not wish to remain in chapter 13, a creditor's motion to convert is pending, as to which discovery is underway. Further, pursuant to § 1307(c), the court may convert the case to chapter 7 for cause when to do so is in the best interests of creditors. Thus, the choice is not an all-or-nothing chapter 13. Debtor lists assets sufficient to satisfy a large part of the debt she acknowledges that she owes. Moreover, in the event that the fraudulent conveyance action(s) is/are successful, the estate stands to recover

---

(Bankr.S.D.Ga. Nov.30, 2007); *In re Davis*, No. 06-1005, 2007 WL 1468681, at *2 (Bankr.M.D.Fla. May 16, 2007). In addition to *In re Jacobsen*, we have located the following post-*Marrama* lower court decisions holding that the right to dismiss is qualified by an exception for bad faith or abuse of process. *See In re Caola*, 422 B.R. 13, 20 (Bankr.D.N.J.2010); *In re Armstrong*, 408 B.R. 559, 560 (Bankr.E.D.N.Y.2009); *In re Norsworthy*, No. 05-15098, 2009 WL 6499238, at *2, 2009 Bankr.LEXIS 1381, at *3-4 (Bankr.N.D.Ga. May 27, 2009); *In re Chabot*, 411 B.R. 685, 700 (Bankr.D.Mont.2009); *In re Letterese*, 397 B.R. 507, 512 (Bankr.S.D.Fla.2008); *see also Sasso v. Boyajian (In re Sasso)*, 409 B.R. 251, 254 (1st Cir. BAP 2009) (dismissing as moot an appeal from the bankruptcy court's order denying a Chapter 13 debtor's request for dismissal where the debtor did not appeal the later order converting the case to Chapter 7); *In re Brandford*, 386 B.R. 742, 750 (Bankr.N.D.Ind.2008) ("[Section] 1307(b) is a statement of a debtor's absolute right to dismiss a Chapter 13 case, perhaps only subject to potential conversion of the case to a Chapter 7 in the event of commission of fraud during ... the Chapter 13 case, an issue not ... presented in this record."). . . ."

The debate continues. Cases construing § 1307(b) as non-mandatory when bad faith is established have been decided since *Jacobsen. See, e.g.*, *In re Herrmann*, 2011 WL 671976 (Bankr.D.Vt. Feb. 17, 2011). Cases have also stated that the provision is mandatory and without an exception for bad faith. *See, e.g.*, *In re Williams*, 435 B.R. 552 (Bankr.N.D.Ill. 2010).

6

sufficient assets to pay all creditors in full.

In a thorough analysis of whether § 1307(b) affords any discretion to the bankruptcy court, the United States Court of Appeals for the Fifth Circuit, the only appellate court to have addressed this question, determined that the issue is similar to that concerning § 706(a) which was addressed by the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).  In *Marrama*, the Court was confronted with a chapter 7 debtor whose filed schedules were "misleading" and "inaccurate" in that the debtor (1) listed the value of a trust as zero when the trust actually held a house of substantial value, and (2) denied that he had transferred the house to the trust in the year prior to the date of his petition. *Id*. at 368, 127 S.Ct. 1105.  When the trustee declared an intention to recover the house as an asset of the estate, Marrama sought to convert his case to Chapter 13 pursuant to 11 U.S.C. § 706(a).  *Id*. at 368-69, 127 S.Ct. 1105.  Section 706(a) provides:

> [t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

11 U.S.C. § 706(a).

In *In re Jacobsen*, 609 F.3d 647, 660 (5th Cir. 2010), the Court stated:

> We interpret § 1307 in accordance with the Supreme Court's decision in *Marrama*.  Although possessing slight variations in wording, both § 706(a) and § 1307(b) leave the decision to convert or dismiss, respectively, to the debtor. *Compare* 11 U.S.C. § 706(a) ("The debtor may convert . . . at any time . . . .") with [11 U.S.C.] § 1307(b) ("On request of the debtor at any time, . . . the court shall dismiss. . . .").  The legislative history of each section reinforces the notion that the debtor's right is absolute and

> unqualified. *See* S. REP. NO. 95-989, at 94 (1978), U.S. Code Cong. & Admin. News 1978, at p. 5880 ("Subsection (a) of [§ 706] gives the debtor the one-time absolute right of conversion . . . ."); *id.* at 141, U.S. Code Cong. & Admin. News 1978, at p. 5927 ("Subsection[ ] (b) [of § 1307] confirm[s], without qualification, the right[ ] of a Chapter 13 debtor . . . to have the Chapter 13 case dismissed."). Yet notwithstanding the apparent absoluteness of a debtor's right to dismiss under § 706(a), the Supreme Court held that the directive in the legislative history was "equivocal," *Marrama*, 549 U.S. at 372, 127 S.Ct. 1105, and that such a right was qualified by an exception for bad-faith conduct by the debtor. *See id.* at 374, 127 S.Ct. 1105.

The *Jacobsen* court noted that *Marrama* included § 105(a) as one of the bases for permitting the bankruptcy court to exercise some discretion despite the seemingly mandatory language of § 706(a):

> [T]he Court spoke in clear terms that bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process' [under] § 105(a) of the Code," *id.*, and that they would have such power even in the absence of § 105(a) due to "the inherent power of every federal court to sanction 'abusive litigation practices,'" *id.* at 375-76, 127 S.Ct. 1105 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)). In the Court's view, this power was sufficient to negate the apparently absolute nature of Marrama's right to convert under § 706(a). *Id.* at 376, 127 S.Ct. 1105.

*Jacobsen*, 609 F.3d at 661.

*Jacobsen* rejected the contention that *Marrama*'s reasoning does not apply outside the context of § 706 even though § 706 includes the word "may" and § 1307(b) uses "shall." The *Jacobsen* court stated that *Marrama* made it clear that bankruptcy courts are vested with the authority to take appropriate action in response to an abuse of process. *See Marrama*, 549 U.S. at 375, 127 S.Ct. 1105. Cognizant that § 105 is not a roving commission to do equity, *Jacobsen* held that the bankruptcy court had the power to deny a motion to dismiss under § 1307(b), at

8

least where the motion to dismiss followed a motion to convert. *Jacobsen*, 609 F.3d at 661.

In *In re Caola*, 422 B.R. 13 (Bankr. D.N.J. 2010), the Bankruptcy Court for the District of New Jersey faced a circumstance similar to that at bench. The chapter 13 Trustee filed an objection to debtor's voluntary dismissal and sought conversion instead based on the assertion that debtor's prepetition transfer of his one-half interest in real property to his spouse was a fraudulent transfer. The court determined that the debtor had no absolute right to dismissal and ruled that the right is qualified by an implied exception for bad faith conduct or abuse of the bankruptcy process. The court scheduled an evidentiary hearing to determine whether debtor had acted in bad faith. In essence, the court noted that permitting a debtor to voluntarily dismiss a case in response to a motion to convert would permit abusive practices. *Coala*, 422 B.R. at 20.

The facts in the pending case are just as likely to open the door to abuse as they were in *Caola*. Here, Debtor filed bankruptcy, took advantage of the automatic stay of matters pending against her, and caused her creditors to appear in matters before this court and to file actions against her. Even if, *arguendo,* her action in commencing the bankruptcy was undertaken in good faith, attempting to dismiss it on the facts before this court is not. Moreover, the effect of dismissal, which would once again force her creditors back into other courts after Debtor delayed their suits in those courts, would further the abuse of process of which Debtor has already been found culpable. *See* D.N. 22, Exhibit B, p. 3 (the District Court's Memorandum Opinion and Order, at Case No. 02:09-cv-1116).

Similar to the case law discussed above where the debtor filed a motion to dismiss in response to a motion to convert, Debtor's Motion to Dismiss, in this case, is in response to numerous actions against her, including two challenging dischargeability for willful and

9

malicious misconduct. A much abbreviated chronology of the 164 docket entries on the main case docket indicates why the Debtor has thought better of her decision to invoke the bankruptcy process: the objection to confirmation of the plan, which began the process now under review, appears at D.N. 22; the debtor's motion to convert at D.N. 28; the commencement of an Adversary Proceeding challenging dischargeability for willful and malicious misconduct at D.N. 34; the commencement of another Adversary Proceeding challenging dischargeability for willful and malicious misconduct at D.N. 36; Debtor's motion to dismiss at D.N. 50; Debtor's motion to withdraw her own motion to convert at D.N. 88; and, creditor Messmer's motion to convert at D.N. 95.

Even without identifying the responses, objections, arguments and hearings that dealt with the above-specified events, it is clear that Debtor's effort to dismiss the case is the next effort in her litigious past to put her creditors to great expense while side-stepping any real effort to reconcile or satisfy their debts. If the bankruptcy were dismissed, then the District Court would once again face (now stayed) proceedings on the sanctions it ordered; the state court would once again face proceedings on the (now removed) creditor's fraudulent conveyance action; the state court would once again face proceedings in the (now stayed) effort to collect on the Messmer judgment; creditors would once again be faced with litigation in multiple fora - all in an effort to liquidate their claims or collect on their judgments or defend abusive actions; and, the chapter 13 Trustee would have expended substantial time, effort and costs in the on-going effort to identify assets that, if an avoidance and recovery action is successful, will be more than sufficient to pay all of the creditors in full.

In summary, to dismiss this case when the District Court has already ruled that Debtor's

prepetition efforts to commence litigation before that court were barred by res judicata or by the applicable statues of limitations and were, in any event, "abusive litigation or misuse of the court's process," D.N. 22, at Exhibit B, p. 3, because Debtor had "forced these same Defendants to defend themselves numerous times in various venues on the same claims," *id.*, with the same resolution each time - i.e., Debtor lost - would be tantamount to permitting Debtor to begin that abusive process all over again. Rather than permitting those sundry actions to conclude in the courts in which they were pending, Debtor filed this bankruptcy. This court will exercise its inherent powers to prevent an abuse of process and its § 105 powers "to do any act necessary to prevent an abuse of process" by denying the Motion to Dismiss.

Because of the unique circumstances of this case, including, *inter alia*, the fact that conversion will not terminate or resolve any of the pending Adversary actions and will not prevent the avoidance action(s) from continuing, Debtor may not wish to have her currently held assets liquidated to satisfy her debts and may desire to remain in chapter 13. The court is therefore providing Debtor with the opportunity to consult with her counsel prior to converting the case. Unless Debtor elects to remain in chapter 13, conversion will be in the best interest of creditors and the case will be converted to chapter 7 pursuant to § 1307(c).

An appropriate Order will be entered.

Date:    April 29, 2011

*Judith K. Fitzgerald*    cjs
Judith K. Fitzgerald
United States Bankruptcy Judge

**In the United States Bankruptcy Court
for the Western District of Pennsylvania**

| | | |
|---|---|---|
| In Re: | ) | |
| Carole L. Taylor | ) | Bankruptcy No. 10-20954-JKF |
| a/k/a Carol Thompson-Taylor | ) | Chapter 13 |
| Debtor | ) | |
| | ) | Related to: Document No. 87 |
| Carole L. Taylor | ) | |
| a/k/a Carol Thompson-Taylor | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Ronda J. Winnecour, Trustee | ) | |
| Respondent. | ) | |

**ORDER**

    **AND NOW**, this **29th day of April, 2011**, for the reasons expressed in the foregoing Memorandum Opinion of even date, it is **ORDERED** that Debtor's MOTION TO DISMISS her bankruptcy case is **DENIED**.

    **IT IS FURTHER ORDERED** that, if Debtor elects to remain in chapter 13, Debtor shall file and serve a statement of such intention on or before June 1, 2011. If Debtor fails to timely file the statement, this case will be converted to chapter 7 on June 3, 2011, without further notice or hearing.

    **IT IS FURTHER ORDERED** that in the event that the case is converted, the chapter 13 Trustee shall forthwith advise the chapter 7 Trustee of the pending motions and adversary actions and of the status conference scheduled on July 12, 2011 at 1:00 P.M., and BOTH Trustees shall then appear.

Dated: 4/29/2011
14:56:57

*Judith K. Fitzgerald*    cjs
Judith K. Fitzgerald
United States Bankruptcy Judge

1